UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                    Case No: 2:21-cv-382-JES-KCD

GEORGE N. GAYNOR JR., in
his capacity as personal
representative of the
Estate of Lavern N. Gaynor
and trustee of the Lavern
N. Gaynor Revocable Trust,

       Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on two Motions in Limine, one filed by the United States of America (the Government or Plaintiff) on January 11, 2024 (Doc. #68) and the other filed by defendant George N. Gaynor Jr. on the same day. (Doc. #69.) Each party also filed their respective Responses in Opposition. (Docs ##76-77.)

The only issue for the jury in this case is whether Lavern N. Gaynor's (Mrs. Gaynor) failure to file FBAR forms for each of the tax years 2009, 2010, and 2011 was "willful." Mrs. Gaynor is deceased, so the defendant is her son, George N. Gaynor Jr. (Gaynor or Defendant), in his representative capacity. The motions in limine relate to the admissibility of three categories of evidence: (1) certain financial records; (2) a biographical

"as told to" book titled <u>Lal: A Legacy of Gracious Giving</u>; and (3) evidence about Gaynor's own FBAR penalty proceedings. For the reasons set forth below, each motion is granted in part and denied in part.

**I.**

A motion in limine is a "motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." <u>Luce v. United States</u>, 469 U.S. 38, 40 n.2 (1984). These motions "are generally disfavored." <u>Acevedo v. NCL (Bah.) Ltd.</u>, 317 F. Supp. 3d 1188, 1192 (S.D. Fla. 2017). "Evidence is excluded upon a motion in limine only if the evidence is clearly inadmissible for any purpose." <u>Id.</u> "A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." <u>McHale v. Crown Equip. Corp.</u>, No. 8:19-CV-707-VMC-SPF, 2021 WL 4527509, at *1 (M.D. Fla. Oct. 1, 2021)(citing <u>LSQ Funding Grp. v. EDS Field Servs.</u>, 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012)). "Nor may a party use a motion in limine to sterilize the other party's presentation of the case." <u>Harris v. Wingo</u>, No. 2:18-CV-17-FTM-29MRM, 2021 WL 5028201, at *1 (M.D. Fla. Oct. 29, 2021)(cleaned up). Additionally, as the Supreme Court has cautioned:

> The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even

- 2 -

> if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.

Luce, 469 U.S. at 41-42.

"A denial of a motion in limine is not a ruling which affirmatively admits any particular evidence," Harris, 2021 WL 5028201, at *1, and does not preserve an issue for appellate review. United States v. Gari, 572 F.3d 1352, 1356 n.2 (11th Cir. 2009). "The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground." United States v. Gonzalez, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." In re Seroquel Prod. Liab. Litig., No. 606MD-1769-ORL-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009).

## II.

The parties disagree over the admissibility of certain financial records.  The parties do not dispute the authenticity of the records (Doc. #77, p. 1), or the accuracy of the translations. (Id.) Rather, the issue is whether the records come within the business records exception to hearsay contained in Federal Rule of Evidence Rule 803(6), or alternatively, Rule 807's residual hearsay exception.

"Hearsay is a statement, other than one made by a declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." United States v. Santos, 947 F.3d 711, 723 (11th Cir. 2020)(quoting United States v. Rivera, 780 F.3d 1084, 1092 (11th Cir. 2015)). "Hearsay is inadmissible unless the statement is not hearsay as provided by Rule 801(d) or falls into one of the hearsay exceptions." United States v. Caraballo, 595 F.3d 1214, 1226 (11th Cir. 2010)(quoting United States v. Baker, 432 F.3d 1189, 1203 (11th Cir. 2005)).

**A. Business Records Exception to Hearsay**

A statement that is otherwise inadmissible hearsay is admissible if it satisfies the business record exception to the hearsay rule.  A statement is a business record if it is a record of an event and: (1) was made at or near the time of the event by someone with knowledge; (2) was kept in the course of a regularly conducted business activity; (3) making the record was a regular practice of that activity; (4) those conditions are shown by the testimony of the custodian of the records or another qualified witness or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (5) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6).  See Carrizosa v. Chiquita Brands Int'l, Inc., 47 F.4th 1278, 1297 (11th Cir. 2022).

The "qualified witness" need not have been the one who prepared the documents, "so long as other circumstantial evidence and testimony suggest their trustworthiness." Itel Cap. Corp. v. Cups Coal Co., 707 F.2d 1253, 1259 (11th Cir. 1983). A "testifying witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation.  Nor must the witness know the precise circumstances under which the records were kept as long as enough circumstantial evidence establish[es] the trustworthiness of the underlying documents. Rule 803 does not demand that the one who kept the record, or even had supervision over [its] preparation, testify." United States v. Ahmed, 73 F.4th 1363, 1383 (11th Cir. 2023)(citations and internal punctuation omitted.)

As the proponent of the evidence, the Government bears the burden of showing that the documents are authentic" and that they meet the requirements of Rule 803(6).  In re Int'l Mgmt. Assocs., LLC, 781 F.3d 1262, 1266 (11th Cir. 2015). Since the parties agree the documents are authentic, (Doc. #77, p. 1), the only question is whether the financial records meet the requirements of Rule 803(6). "In the end, admissibility under the business records exception boils down to reliability, 'and a trial judge has broad discretion to determine the admissibility of such evidence.'"  Ahmed, 73 F.4th at 1382-83 (quoting United States v. Joseph, 978 F.3d 1251, 1265 (11th Cir. 2020)).

- 5 -

## B. Residual Hearsay Exception

After reasonable notice, "Rule 807 allows a hearsay statement to be admitted, even if it doesn't fall under any exception in Rules 803 or 804, if the statement (1) 'is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement,' and (2) 'is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.'" Chiquita Brands Int'l, Inc., 47 F.4th at 1326 (quoting Fed. R. Evid. 807(a)). "'Congress intended the residual hearsay exception to be used very rarely, and only in exceptional circumstances,' and it 'appl[ies] only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present.'" Rivers v. United States, 777 F.3d 1306, 1312 (11th Cir. 2015)(quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1279 (11th Cir.2009)). "[T]he burden is on the party seeking to invoke the residual exception to clearly demonstrate the existence of the requisite guarantees of trustworthiness." N.L.R.B. v. United Sanitation Serv., Div. of Sanitas Serv. Corp., 737 F.2d 936, 941 (11th Cir. 1984)(citing United States v. Colson, 662 F.2d 1389, 1392 (11th Cir. 1981)).

### C. The Contested Financial Documents

The contested financial records can be divided into four categories, based on how they are being certified: (1) Records of Frey & Co. Administration AG, which are supported by a declaration from Ernst Specht, identified as the managing director of Frey & Co. Administration AG (Doc. #68-2); (2) Records of Gery Trading Corp. and Gusto Foundation, which are supported by a declaration from Sascha Zuger, identified as the country managing director of Vistra Zurich (Doc. #68-4); (3) Records of Bank Julius Baer & Co. Ltd., which are supported by a declaration from Christoph Hiestand, identified as Group General Counsel for Julius Baer Group Ltd. (Doc. #68-1); and (4) Records of Banque Louis, which are unsupported by any declaration.

### (1)  Frey & Co. Administration AG Records

Defendant argues the Frey & Co. Administration AG records do not meet the requirement in Rule 803(6)(d) because "the declarant—Ernst Specht—has inserted a caveat to the declaration" by adding the word 'presumably'. (Doc. #77, p. 4.) The declaration was obviously modified to insert the word 'presumably', as follows:

> I further declare that the documents attached are original records or true copies of records that: were made at or near the time of the occurrence of the matters set forth therein, by (or from information transmitted by) a person **presumably** with knowledge of those matters . . . .

(Doc. #68-2)(emphasis added.) "The problem," the Defendant
argues, "is that by inserti[ng] the word 'presumably' to qualify
his attestation, Specht states merely that he assumes the fact
is correct, rather than that he can attest to it even based upon
other than first-hand knowledge." (Doc. #77, p. 4-5.)

Defendant cites no authority and his argument is
unpersuasive. Declarations under Rule 803(6) need not adhere to
a set language to be valid. See Chiquita Brands Int'l, Inc., 47
F.4th at 1300. The declarant here is merely stating what is often
the case: he cannot personally speak for someone else's
knowledge. Nor does he need to. "It is not essential that the
offering witness be the recorder or even be certain of who
recorded the item. It is sufficient that the witness be able to
identify the record as authentic and specify that it was made and
preserved in the regular course of business." United States v.
Langford, 647 F.3d 1309, 1327 (11th Cir. 2011) (quoting United
States v. Atchley, 699 F.2d 1055, 1058 (11th Cir. 1983)). Here,
the declarant does just that: "I further declare that that the
documents attached hereto . . . were kept in the course of the
regularly conducted business activity of Frey & Co." and "were
prepared or maintained in the course of the said business activity
as a regular practice . . . ." (Doc. #68-2.) The insertion of the
word 'presumably' does not make the declaration or the evidence
it supports unreliable.

This portion of Defendant's motion is **denied**. The Frey & Co. Administration AG records are not inadmissible under the business records exception.

**(2)  Gery Trading Corp. and Gusto Foundation Records**

Defendant argues that the Gery Trading Corp. and Gusto Foundation records do not meet the requirement in Rule 803(6)(d) because the declarant, Sascha Zuger, "does not explain how—as an employee of Vistra Zurich—he could be in a position to attest to the records of Gery Trading Corp. and Gusto Foundation." (Doc. #77, p. 5.)

A declarant does not need to be employed by the same entity whose business records are offered. See United States v. Flom, 558 F.2d 1179, 1182 (5th Cir. 1977)[1] ("Although the usual case involves an employee of the preparing business laying the necessary foundation under 803(6), the law is clear that under circumstances which demonstrate trustworthiness it is not necessary that the one who kept the record, or even had supervision over [its] preparation, testify."). But "Fed. R. Evid. 803(6) [does] require[] the testimony [or declaration] of

---

[1] The Eleventh Circuit "ha[s] adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by a Unit B panel of the former Fifth Circuit." In re Forrest, 47 F.4th 1229, 1235 n.3 (11th Cir. 2022)(citing Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982)). Any other opinions from other circuits are merely persuasive.

a custodian or other qualified witness who can explain the record-keeping procedure utilized." United States v. Garnett, 122 F.3d 1016, 1018-19 (11th Cir. 1997). Who qualifies as "[a ']qualified witness' is given a very broad interpretation. The witness need only have enough familiarity with the record-keeping system of the entity in question to explain how the record came into existence." Chiquita Brands Int'l, Inc., 47 F.4th at 1299-300 (alterations in the original) (quoting Weinstein's Fed. Evid. § at 803.08[8][a]). "It is not necessary for the person who actually prepared the documents to testify so long as there is other circumstantial evidence and testimony to suggest the trustworthiness of the documents." Garnett, 122 F.3d at 1019(citing Itel Capital Corp. v. Cups Coal Co., 707 F.2d 1253, 1259 (11th Cir. 1983)).

The Government does not explain the link between Vistra Zurich and the entities whose records are being offered. Sascha Zuger states in her declaration that "[b]y reasons of [her] position [she is] authorized and qualified to make th[e] declaration." (Doc. #68-4.)   But this does not say what the position is with regard to Gery Trading Corp. and Gusto Foundation, or who authorized her, or how she is qualified.   Such conclusory statements are not sufficient to show the trustworthiness of the records.

This portion of Defendant's motion is **granted** to the extent that the Gery Trading Corp. and Gusto Foundation records are inadmissible under the business records exception if this is the foundation presented at trial.

### (3)  **Bank Julius Baer & Co. Ltd Records**

Defendant argues that the Bank Julius records do not meet the requirement in Rule 803(6)(e) because the bank has previously "admitted to falsifying records concerning foreign bank accounts held by American taxpayers—the very kinds of records the Government seeks to admit" here. (Doc. #77, pp. 5-6.) The defendant points to two deferred prosecution agreements executed by Bank Julius in 2016 and 2021 as proof. (See Docs. ##77-1,2.)

"Even if the underlying documents satisfied [all the other 803(6)] requirements, they would still be inadmissible if either their 'source of information' or their 'method or circumstances of preparation indicate a lack of trustworthiness.'" In re Int'l Mgmt. Assocs., LLC, 781 F.3d at 1267 (quoting Fed. R. Evid. 803(6)(e)). For example, in Dreer, the proffered evidence itself was not shown to be "falsified, [but] there was an extremely strong inference arising from evidence of numerous other forged financial documents that the proffered evidence was not genuine." Id., 740 F.2d at 20. That was enough for the district court to find the proponent had not met his burden of establishing the

evidence was reliable enough to qualify under the business records exception. Id.

Here, Defendant presents no evidence of "numerous" other forged financial documents. In the first deferred prosecution agreement, Bank Julius admitted to, among other things, giving clients codenames, maintaining accounts for clients in names of others, and not maintaining bank records in the United States, all to help those clients evade taxes. (Doc. #77-1, pp. 27-28.) Nowhere does Bank Julius admit to falsifying its documents. In the second deferred prosecution agreement, Bank Julius admitted generally to turning a blind eye to money laundering for soccer bribes from about February 2013 to May 2015. (Doc. #77-2, p. 25-35.) Again, nowhere does Bank Julius admit to falsifying its documents. Additionally, the admissions relate to an unrelated time-period and topic. This portion of Defendant's motion is **denied.** The Bank Julius records are not inadmissible under the business records exception.

### (4) Banque Louis Records

The Government argues the uncertified Banque Louis records are admissible through Rule 807's residual hearsay exception. (Doc. #68, pp. 8-14.) The Defendant disagrees. (Doc. #77, pp. 7-9.) So does the Court.

The Banque Louis records fail to satisfy the requirements of Rule 807 for several reasons. First, they cannot be said to

possess exceptional guarantees of trustworthiness. While they seem to bear typical bank markings, they are not accompanied by <u>any</u> testimony, declaration, certification or evidence that can attest to their truthfulness or reliability. The Government indicates they were pulled by an unnamed "former IT technician" (Doc. #68, p. 2), so its chain of custody is questionable at best. The Government has "made no showing that reasonable efforts could not have produced a witness with personal knowledge of" the information in the proffered exhibits. <u>United States v. Scrima</u>, 819 F.2d 996, 1001 (11th Cir. 1987). Defendant's motion is **granted** to the extent the Banque Louis records will not be admissible if this is the only foundation presented at trial.

### III.

Defendant argues <u>Lal</u> should be excluded because it is impermissible hearsay, irrelevant under Rule 401, and substantially more prejudicial than probative under Rule 403. (Doc. #69, p. 3.) The Government responds that "the book is not hearsay because it is an adopted statement of a party opponent" under Rule 801(d)(2)(B), it is not offered to prove the truth of the matter, and it is relevant. (Doc. # 76, pp. 4-5.) The offered passages recount Mrs. Gaynor's great-grandmother's "boycott of the IRS" and how Mrs. Gaynor "inherited [her] great grandmother's belief . . . ." (<u>Lal</u>, at 19-21.) They also recount how "well over seventy percent of [her uncle's] money went to the government,"

(id. at 60), how she was "vocal about [her] beliefs" that "double-tax[ation]" while living overseas was wrong, (id. at 223), "that capital gains taxes are wrong," (id.), and that she was "adamantly against taxation." (Id.)

As pertinent to this case, to be admissible as an adoptive admission under Rule 801(d)(2)(B), "there must be sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement." Santos, 947 F.3d at 724 (quoting United States v. Joshi, 896 F.2d 1303, 1311-12 (11th Cir. 1990)). The foundational facts from which the jury could infer that Mrs. Gaynor heard, understood, and acquiesced in the contents of the book, according to the Government, are that she holds the book's copyright, that she distributed the book to her family members, and the author of the book submitted a declaration stating that Mrs. Gaynor "reviewed and accepted" the book "as an accurate retelling of her life story . . . ." (Doc. #69-2, ¶¶ 6-7.) None are sufficient, either alone or cumulatively.

A jury could not infer from Mrs. Gaynor's copyright and her distribution of the book that she heard, understood, and acquiesced in the particular statements sought to be offered. The author's declaration is more on point, but it itself is hearsay and thus not a "foundational fact" on which the jury could rely. See Woodyard v. Alabama Dep't of Corr., 700 F. App'x 927, 929 n.3

(11th Cir. 2017).[2]  Additionally, it is undisputed that the words in the book are those of Dr. Judith Kolva, and not those of Mrs. Gaynor. (See Doc. #69-2, ¶ 6)(Dr. Kolva's declaration that "the text reflects [her] reconstruction of what Mrs. Gaynor said . . . using words and phrases [Dr. Kolva] drafted.").[3] Thus, "[t]he [book] involves two levels of hearsay: the [book] says that [Dr. Kolva] said (first level) that [Mrs. Gaynor] made certain admissions (second level)." S. Stone Co. v. Singer, 665 F.2d 698, 703 (5th Cir. Unit B 1982). Based on this record, the book remains inadmissible hearsay.

The Government argues that "to the extent the book contains hearsay statements, the United States is not offering them to prove the truth of the matter asserted. Instead, it would offer the statement to demonstrate Mrs. Gaynor's state of mind and motive for keeping a secret Swiss account." (Doc. #76, p. 9)(internal citations omitted). As an example, the Government illustrates that it is not offering the statements "to show that Mrs. Gaynor's uncle's estate did in fact pay 'well over seventy

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." Bonilla v. Baker Concrete Const., Inc., 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

[3] If the book was Mrs. Gaynor's statements, then Rule 801(d)(2)(B) would not even be applicable. United States v. Mentor, 570 F. App'x 894, 898 (11th Cir. 2014)(unpublished)("[S]ince the letter was [defendant]'s own statement, it cannot be an adoptive admission.").

percent of the money . . . to the government.'" (Id.)(quoting Lal at p. 60.)

But the Government's argument only attacks the second level of hearsay—Mrs. Gaynor's alleged statements—while the other level remains. See United States v. Pendas-Martinez, 845 F.2d 938, 942 (11th Cir. 1988)(explaining that under Rule 805, a statement with multiple levels of hearsay is not admissible unless all levels fall under Rule 801 or an exception).  By necessity, the Government is offering Dr. Kolva's hearsay—that Mrs. Gaynor said these statements—for their truth.  Otherwise, the book would be worthless (i.e., irrelevant)[4] to the case.  Defendant's motion is **granted** to the extent the book and its cited passages will not be admissible if this is the only foundation presented at trial.

#### IV.

Defendant argues that reference to his own prior FBAR proceedings should be excluded as irrelevant under Rule 401, substantially more prejudicial than probative under Rule 403, and privileged under Rule 408. (Doc. #69, p. 11.)  The prior proceedings, as described by the Defendant, are as follows:

> In January 27, 2014, George Gaynor, Jr. was advised that his 2010 Tax Return had been selected for audit.

---

[4] Defendant argues that the book is "not relevant to this case and run[s] a substantial risk of unfairly prejudicing Defendant, confusing the issues, and misleading the jury." (Doc. #69, p. 9.)  The Court questions the relevancy of the cited passages, but need not resolve that issue in light of the continuing hearsay nature of the evidence.

On May 18, 2017, the IRS assessed willful FBAR penalties against George Gaynor, Jr., for his failure to report a bank account in which he had a reportable interest. The accounts at issue in George Gaynor Jr.'s FBAR case were not the same accounts as are at issue in this case. George Gaynor appealed this assessment within the IRS and eventually filed suit concerning the liability in the United States Court for Federal Claims. The case was ultimately settled in September 2021.

(Id. at pp. 10-11.) The Government explains that some of the facts between the cases are intertwined, as "Mrs. Gaynor managed her Swiss Accounts through Mr. Gaynor" and "Mr. Gaynor met with the same individual Swiss bankers and Swiss financial advisors . . . to manage both his mother's accounts and his own." (Doc. #76, p. 12.) The Government states it only intends to "use the *facts* underlying those proceedings that are relevant here," with the "source[s]" being "admissions, testimony, and party stipulations in Mr. Gaynor's prior FBAR litigation in the Court of Federal claims." (Id. at p. 14.)

Courts in this Circuit have consistently been wary that "raising . . . prior . . . lawsuit[s] would effectively create a 'mini-trial' about the merits of the previous case[s] and other 'collateral issues' that may not relate to the present case." Goussen v. Mendez Fuel Holdings LLC, No. 18-20012-CIV, 2018 WL 5831084, at *2 (S.D. Fla. Nov. 7, 2018)(quoting Bui v. Minority Mobile Sys., Inc., 2016 WL 6518804, at *1 (S.D. Fla. Jan. 28, 2016); see also Gutierrez v. Galiano Enterprises of Miami, Corp.,

- 17 -

No. 17-24081-CIV, 2019 WL 3302325, at *3 (S.D. Fla. July 23, 2019); Pineda v. Pescatlantic Grp., LLC, No. 16-25291-CIV, 2018 WL 11346674, at *4 (S.D. Fla. Aug. 16, 2018). The relevancy is even more dubious here given that the prior case is not even Mrs. Gaynor's. Courts have recognized that "Plaintiff can demonstrate Defendants' potential willfulness . . . through witness testimonies or other evidence of Defendant['s] past actions and practices without mention of previous lawsuits." Goussen, 2018 WL 5831084, at *2 (quoting Bui, 2016 WL 6518804, at *1). While the government may, for example, elicit testimony that "Mrs. Gaynor managed her Swiss Accounts through Mr. Gaynor," this would not seem to make Gaynor's personal FBAR experience relevant or admissible. But, as is often the case with evidentiary issues, the Court is not in a position prior to trial to definitively resolve the objection. United States v. Mock, 604 F.2d 336, 339 (5th Cir. 1979)("[Q]uestions of admissibility are more easily understood in the specific context in which they arise.")  The motion will be **granted** to the extent that the government may not elicit testimony or evidence concerning Gaynor's own FBAR proceedings without the prior approval of the Court.

Accordingly, it is hereby

**ORDERED:**

The Parties' Motion in Limine (Doc. #68) and Motion in Limine (Doc. #69) are **GRANTED in part and DENIED in part** as set forth above.

**DONE and ORDERED** at Fort Myers, Florida, this ___9th___ day of February, 2024.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record